IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02715-CMA-CBS

ENCARNACION T. RIVERA,
        Plaintiff,
v.

BEVERLY DOWIS, HSA, Physician Health Partners,
WARDEN KEVIN MILYARD, Sterling Correctional Facility,
ARISTEDES ZAVARAS, Executive Director of C.D.O.C.,
P.A. JOANN STOCK, Sterling Correctional Facility P.H.P.,
N.P. KATHRY [sic] RITTENHOUSE, Sterling Correctional P.H.P.,
DR. JOSEPH GARY FORTUNADO, Sterling Correctional Facility P.H.P.,
DR. PAULA FRANTZ, Chief Medical Officer, Physician Health Partners,
CAPTAIN RICHIE MISHIARA, Sterling Correctional Facility,
CAPTAIN WEINGARDT, Sterling Correctional Facility,
DR. STEPHEN KREBS, Physician Health Partners,
CATHIE HOLST, A.D.A. Coordinator, Colorado Department of Corrections, and
JOHN DOE AND JANE DOE 1-10,
all named Defendants in their official and individual capacities,
        Defendants.

───────────────────────────────────────────────────────────────

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

───────────────────────────────────────────────────────────────

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendant Krebs' Motion to Dismiss (filed June 22, 2009) (doc. # 31); and (2) Defendants' Motion to Dismiss (filed June 22, 2009) (doc. # 34). Pursuant to the Order of Reference dated April 23, 2009 (doc. # 21) and the memoranda dated June 22, 2009 (docs. # 32 and # 35), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Defendant Krebs' Supplement (filed June 24, 2009) (doc. # 37), Mr. Rivera's "Combined Rebuttal of State Defendants' Motion to Dismiss and Dr. Stephen Krebs, M.D. P.H.P" ("Response") (filed July 22, 2009) (doc. # 38), Defendant Krebs' Reply (filed July 27, 2009) (doc. # 39), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

1

I.      Statement of the Case

At the time this civil action was filed, Mr. Rivera was incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC") in Sterling, Colorado. (*See* Second Amended Prisoner Complaint ("SAC") (doc. # 17)). Mr. Rivera was released from CDOC on September 30, 2009. (*See* doc. # 45). Mr. Rivera claims he received inadequate medical care for several medical concerns during his incarceration. Mr. Rivera alleges five claims for relief pursuant to 42 U.S.C. §1983 for violation of his Eighth Amendment rights and for malpractice: (1) "Catera[ct] removal and blindness;" (2) "Pain in both legs due to Erythema Nodosa;" (3) "Broken right wrist;" (4) "Malpractice;" and (5) "Eighth Amendment Deprivation of civil rights pattern of misconduct (all Defendants[)]." Mr. Rivera sues eleven named Defendants and John and Jane Does 1 through 10 "in their official and individual capacities." (*See* SAC). Mr. Rivera seeks declaratory relief, injunctive relief, compensatory damages in the amount of $500,000 against each Defendant, and punitive damages in the amount of $500,000 against each Defendant. (*See* SAC at p. 26 of 26). Defendants have moved for dismissal of the SAC on several grounds pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

In his first claim, Mr. Rivera alleges that while he was incarcerated in 2003, he was diagnosed with a cataract in his right eye. (*See* SAC at pp. 6, 8 of 26). Mr. Rivera alleges he was told that he did not qualify for surgery to remove the cataract because he was only serving a two-year sentence. (*See id*). Mr. Rivera was discharged from prison on October 28, 2004. (*See id*). In January 2005, Mr. Rivera was again sentenced to the CDOC to serve a four-year prison term at SCF. (*See* SAC at pp. 6, 9 of 26). Mr. Rivera alleges he informed the medical staff at SCF that he had a cataract in his right eye, and needed surgery to have it removed. (*See id*). Mr. Rivera alleges that his request for cataract surgery was denied because he is not a diabetic, he can still see out of his left eye, and there are not sufficient funds for the surgery. (See SAC at pp. 6, 9 of 26). Mr. Rivera

alleges that his last visit to an eye doctor was in 2007.  (*See id*. at p. 6 of 26).      In his second claim, Mr. Rivera complains that he has pain in both of his legs due to Erythema Nodosa.  (See SAC at p. 10 of 26).  Mr. Rivera claims that on February 2, 2006, he was seen by Dr. Fortunato and Nurse Practitioner Rittenhouse complaining of red bumps that had appeared on both of his legs.  (*See id*.).  Mr. Rivera alleges that he was given steroid cream by Ms. Rittenhouse, despite telling her that he was allergic to steroids. (*See id*.).

In his third claim, Mr. Rivera alleges that on December 20, 2006, he slipped and fell and broke his right wrist.  (See SAC at p. 12 of 26).  His wrist was placed in a temporary splint.  (*See id*.).  Mr. Rivera claims that the Christmas and New Year's holiday delayed by two weeks a scheduled surgery to place pins and screws in his wrist.  (*See id*.).  After the holidays, he was seen by a medical provider and told that surgery was not necessary because his bones were already mending.  (*See id*.).  On January 26, 2007, Mr. Rivera was examined by a doctor who stated that his bones were "mending pretty well."  (*See id*.).  On June 4, 2007, after returning to his job on the Ground Maintenance Crew, Mr. Rivera reported to Ms. Rittenhouse that his two fingers were going numb.  (*See id*.).  After more x-rays, Mr. Rivera was told that he has arthritis.  Mr. Rivera alleges that  he can no longer pick up anything weighing over three pounds with his right hand.  (*See id*. at p. 13 of 26).

In Claim Four, Mr. Rivera alleges malpractice for the delay in treating the red bumps on his legs that were diagnosed as erythema nodosa, for the cream prescribed that caused additional burning, itching, and pain, and for failure to provide prescribed pain medicine. (See SAC at p. 14-16 of 26).

In Claim Five, Mr. Rivera alleges that on October 3, 2006, he was prescribed a steroid medication to which he was allergic and that caused internal bleeding.  (See SAC at p. 18 of 26).  Mr. Rivera also generally alleges that Defendants inadequately responded to various medical needs.  (*See id*. at pp. 19-20 of 26).  Mr. Rivera further alleges that Defendant Mishiara, as the housing captain at SCF, has failed to provide accommodations

pursuant to the Americans with Disabilities Act of 1990 ("ADA") and knew of incidents in which correctional officers have closed the electric sliding doors on inmates. (See SAC at pp. 20-21 of 26). Mr. Rivera alleges that there are not enough ADA jobs, the medication line is not wheelchair accessible, there are not enough tables in the chow hall for inmates with wheelchairs, and the shower in Unit 1B does not have handicap railings. (*See id.*). Mr. Rivera alleges that Defendant Wingert responded inappropriately to his complaints about ADA compliance and that Defendant Holst has taken the role of ADA Coordinator without any proper training and has made a mockery of the ADA laws. (See SAC at pp. 22-23 of 26).

II.    Standard of Review

While Defendants have cited Rule 12(b)(1), they make no specific arguments pursuant to Rule 12(b)(1). Under Rule 12(b)(1), a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

Because Mr. Rivera appears *pro se*, the court "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.    Analysis

A.    Liability of Defendants in Their Official and Individual Capacities

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 49-50 (1999).

To the extent that Mr. Rivera is suing Defendants in their official capacities, he is actually attempting to impose liability on Defendants' employer, the CDOC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state). The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. States and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). To the extent that Mr. Rivera seeks monetary damages against Defendants in their official capacities, his claims are properly dismissed with prejudice.

To the extent that Mr. Rivera is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Graham*, 473 U.S. at 165-67.

B.   Statute of Limitations for § 1983 Claims

Defendants argue that a substantial portion of Mr. Rivera's claims are barred by the statute of limitations. To determine the timeliness of a claim under § 1983, federal courts must look to the applicable state statute of limitations. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions

brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided");  *Blake*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state law.  *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  *See also Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.")  "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue."  *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993).

A prisoner's *pro se* complaint alleging a § 1983 action against state prison officials is treated as filed with the court on the date the prisoner gave it to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 271 (1988). Mr. Rivera  executed the original complaint on January 20, 2009.  (*See* doc. # 5 at p. 35 of 35).  Mr. Rivera's claims arise from conduct that he alleges occurred between December 2005 and October 2008, much of which is more than two years before Mr. Rivera initiated this civil action and outside the statute of limitations.  (*See* SAC at pp. 9, 18 of 26).  Mr. Rivera has not argued that his claims based on conduct occurring before January 20, 2007 had not yet accrued.  *See Hunt*, 17 F.3d at 1266 ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action.");  Response (doc. # 38)).  Thus, under Colorado's applicable two-year statute

of limitations provision, Mr. Rivera's claims that allege conduct before January 20, 2007 appear to be barred by the statute of limitations.

As an affirmative defense, the statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling"). However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. The issue of tolling, like the statute of limitations, is governed by Colorado state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991). Under Colorado law, there are two circumstances where equitable tolling may apply. The doctrine of equitable tolling "permits the statute of limitations to be tolled only where the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Morrison v. Goff*, 74 P.3d 409, 412-13 (Colo. App. 2003) (citation omitted). *See also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 604-05 (Colo. App. 2000) ("[i]n order for a statute of limitations to be tolled because of equitable considerations, it is the plaintiff's burden to establish that the defendant's actions prevented her from filing a timely claim.") (citation omitted). Mr. Rivera has not argued any basis for equitable tolling. (*See* Response (doc. # 38)).

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted). *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the

"allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted); *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such a s noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003).  Mr. Rivera's allegations plainly support dismissal of his claims based on conduct that occurred before January 20, 2007 as barred by the statute of limitations.

C.     Claim One Relating to Treatment of Cataract

Defendants have moved to dismiss Claim One based upon Mr. Rivera's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his confinement.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  *See also Jones v. Bock*, 549 U.S. at 218 ("to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself") (internal quotation marks and citation omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), "[t]he Supreme Court . . . set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' " *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. at 216 and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d at 1241.  Dismissal under § 1997e(a) for failure to exhaust administrative remedies therefore cannot usually be made on pleadings without proof.  *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse'") (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d at 1225)).

At the time Mr. Rivera filed his grievances, the CDOC provided inmates an administrative grievance process as set forth in Administrative Regulation ("AR") 850-04, which consists of 3 steps.  (*See* AR 850-04 (IV)(B)(4)(b), effective November 15, 2007, superseded December 1, 2008).  The court may take judicial notice of the CDOC's administrative process.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir.1979) (judicial notice taken of Bureau of Prisons' Program Statement).  AR 850-04 sets forth that inmates are required to first attempt to resolve any issue or complaint by filing a Step 1 grievance.  (*See* AR 850-04 (IV)(B)(4)(b)). If the inmate is not satisfied with the result of the Step 1 grievance, the inmate must then file a Step 2 grievance.  (*See id.*).  If the inmate is still unsatisfied with the response to his Step 2 grievance, the inmate must then file a Step 3 grievance.  (*See id.*).  The Step 3 grievance is the final step in the CDOC grievance process.  (*See* AR 850-04 (IV)(C)(4)).  An inmate

has not exhausted his administrative remedies unless and until the inmate files a Step 3 grievance and receives a response from the Grievance Officer. (*See id.*).

In his pleadings, Mr. Rivera admits that he did not fully exhaust the grievance process regarding Claim One, by failing to file a Step 3 grievance regarding the treatment of the cataract in his right eye.  (*See* SAC at p. 9 of 26).   While Mr. Rivera argues that "attached are the ex[h]austed grievances to support my case (*see* Response (doc. # 38) at p. 3 of 11), the grievances attached to the original Complaint substantiate Mr. Rivera's allegation that he did not fully exhaust the grievance process regarding Claim One, by failing to file a Step 3 grievance.  (*See* doc. # 5 at pp. 11-12, 22-25, 30-33 of 35;  SAC at p. 9 of 26).[1]  As the SAC makes clear on its face that Mr. Rivera did not exhaust his administrative remedies, Claim One is properly dismissed.

D.     Section 1983 Claims and Personal Participation

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

A defendant may not be held liable merely because of his or her supervisory

---

[1]    "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes");  *Hall*, 935 F.2d at 1112 ("a written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.")).

position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Government officials are not vicariously liable for the misconduct of their subordinates. "There is no concept of strict supervisor liability under § 1983." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006). "Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Id.* There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). *See also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendants Dowis, Milyard, Zavaras, Frantz, Mishiara, Wingert, Krebs, and Holst argue that Mr. Rivera's claims against them must be dismissed for failure to allege the requisite personal participation. (*See* Motion to Dismiss (doc. # 34) at pp. 7-9 of 19; Motion to Dismiss (doc. # 31) at pp. 9-10 of 11). Mr. Rivera makes no allegations regarding these Defendants in Claims Two, Three, or Four. (*See* SAC at pp. 10-17 of 26). In Claim Five, Mr. Rivera's allegations relate only to these Defendants' roles as supervisors. (*See, e.g.*, SAC (doc. # 17 at pp. 18-23). The court agrees that Mr. Rivera has failed to sufficiently plead the alleged unconstitutional acts of Defendants Dowis, Milyard, Zavaras, Frantz, Mishiara, Wingert, Krebs, and Holst.

Mr. Rivera's only allegations relating to Defendant Dowis are that she was aware of the actions of Defendant Stock and relayed information to him in July 2007. (*See* SAC at pp. 18, 19, 20 of 26). Mr. Rivera merely conclusorily alleges that Defendant Dowis

"intentionally interfered with prescribed treatment." (*See id.* at p. 19 of 26). "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted).   Mr. Rivera merely alleges vicarious liability against Defendants Milyard, Warden of SCF, and Zavaras, Executive Director of C.D.O.C. (*See* SAC at pp. 7, 22 of 26 (alleging that Defendant Zavaras, as "superior respondent . . . has an obligation to inmates to provide medical care," Defendants Zavaras and Milyard "are operating an extremely harsh regime," and Defendant Milyard "is my guardian at the S.C.F. prison" and "allows this to happen at his institution;" *see also* Response (doc. # 38) at p. 5 ("Whether or not those officials are actually aware of these statutory and constitutional responsibilities obligations [sic], they are presumed to know what the law requires and may be legally accountable for conduct that violates fixed standards").   Mr. Rivera's allegations relating to Defendant Frantz, Chief Medical Officer of Physician Health Partners ("PHP"), are that she was aware of his medical needs and the "bizarre" actions of Defendant Stock and "said my red bumps are excema [sic]." (*See* SAC at pp. 18, 19 of 26). Mr. Rivera also conclusorily alleges "ne[g]lect due to [her] deliberate indifference" and that she denied his surgeries. (*See id.* at pp. 19, 20 of 26; *see also* Response (doc. # 38) at p. 4 of 11 ("Dr. Paula Frantz, all their responsibilities are for the day today [sic] operations of all prisons in the Colorado prisons . . . .)).

Mr. Rivera alleges that Defendant Mishiara, as the housing captain at SCF, has failed to provide accommodations for disabled inmates pursuant to the ADA. (*See* SAC at pp. 20-21 of 26).   Yet, Mr. Rivera also alleges "[b]ut by the time you read this, they'll have done something about it." (*See id.* at p. 20 of 26).   Mr. Rivera also claims that Defendant Mischiara has knowledge of unspecified incidents in which correctional officers have closed the electric sliding doors on inmates.   (*See id.* at 21 of 26). Mr. Rivera's only allegations relating to Defendant Wingert are that she "develop[s] an attitude" and that when asked about "my accommodations for the chow hall doors and showers," Defendant Wingert

13

responded "What do [you] expect. [You're] in prison." (*See id.* at 23).  Mr. Rivera's only allegations relating to Defendant Holst are that she "as the ADA Coordinator has taken on these duties without any proper training or medical license" and "has made a mockery of the ADA." (*See id.* at 23) (emphasis omitted).  Mr. Rivera alleges that Defendant Krebs, a physician with PHP who treats inmates under a contract with the CDOC, denied his request for surgery on his right wrist.  (*See* SAC at p. 21 of 26).  Mr. Rivera's only allegations relating to Dr. Krebs are that he is "aware of my serious medical needs" and a conclusory allegation that he "intentionally interfered with prescribed treatment." (*See id.* at p. 19 of 26).[2]

Mr. Rivera's allegations do not plausibly support a claim for relief against these Defendants pursuant to § 1983.  The allegations do not support a claim that these Defendants had any direct involvement in, personal participation in, or supervisory liability for the alleged violation of Mr. Rivera's constitutional rights.  Mr. Rivera has not adequately alleged "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna*, 455 F.3d at 1151 (internal quotation marks and citations omitted). Mr. Rivera's failure to allege the requisite personal participation leaves no basis for holding Defendants Dowis, Milyard, Zavaras, Frantz, Mishiara, Wingert, Krebs, and Holst individually liable under § 1983.

E.    Defendants Fortunato, Rittenhouse, Stock, and Krebs

In Claims Two, Three, Four, and Five, Mr. Rivera alleges, among other things, violations of his Eighth Amendment rights by Defendants Fortunato, Rittenhouse, Stock,

---

[2]    Even if Mr. Rivera had adequately alleged personal participation by Defendant Krebs, the court concludes, *infra*, that he has not stated a claim for an Eighth Amendment violation against Defendant Krebs.

and Krebs.[3]

Mr. Rivera alleges that on February 3, 2006 he was seen by Dr. Fortunato regarding his complaints of red bumps on his legs.  (*See* SAC at p. 10 of 26).  Dr. Fortunato diagnosed Erythema Nodosa, not excema as previously diagnosed by a dermatologist. (*See id.* at pp. 10, 14 of 26).  Mr. Rivera claims that both Dr. Fortunato and Defendant Rittenhouse prescribed treatment with the use of a steroid cream, despite being told that Mr. Rivera is allergic to steroids, causing the problem to worsen.  (*Id.* at pp. 10, 14, 18 of 26).  Mr. Rivera was later provided a different ointment that also "made me itch and burn real bad." (*Id.* at pp. 10, 14 of 26).  Mr. Rivera also alleges that on May 2, 2006, Defendant Stock examined him for his complaints of red bumps on his legs.  (*See* SAC at p. 18 of 26). When Mr. Rivera inquired about when he would have a biopsy on the red bumps, Defendant Stock cancelled the appointment and instructed him to leave the office.  (*See id.*)  Mr. Rivera further alleges that Defendant Stock cancelled his trip to Denver Health Medical Center for a biopsy of the red bumps on his legs. (*See id.* at p. 19 of 26).

In Claim Three, Mr. Rivera alleges that on December 20, 2006, he slipped and fell and broke his right wrist.  (See SAC at p. 12 of 26).  Mr. Rivera alleges that the Christmas and New Year's holiday delayed by two weeks a scheduled surgery to place pins and screws in his wrist.  (*See id.*).  After the holidays, he was seen by a medical provider and told that surgery was not necessary because his bones were already mending.  (*See id.*). On June 4, 2007, after returning to his job on the Ground Maintenance Crew, Mr. Rivera reported to Ms. Rittenhouse that two of his fingers were going numb. (*See id.*).  After more x-rays, Mr. Rivera was told that he has severe arthritis.  Mr. Rivera alleges that  he can no longer pick up anything weighing over three pounds with his right hand. (*See id.* at p. 13 of 26).

---

[3]   Mr. Rivera names Defendants Krebs and Stock in Claim Five.  Defendant Fortunato is named in Claims Two, Three, and Five.  Defendant Rittenhouse is named in Claims Two, Three, Four, and Five.  (*See* SAC).

In Claim Four, Mr. Rivera alleges malpractice for the delay in treating the red bumps on his legs, for the cream prescribed that caused additional burning, itching, and pain, and for failure to provide appropriate pain medicine.  (See SAC at p. 14-16 of 26).  Mr. Rivera alleges that on February 24, 2006 Dr. Fortunato did not help with the red bumps on his legs, but instead discontinued his potassium pills.  (*See id.* at p. 16 of 26).

In Claim Five, Mr. Rivera alleges that on October 3, 2006, he was prescribed a steroid medication to which he was allergic and that caused internal bleeding.  (See SAC at p. 18 of 26).  Mr. Rivera also generally alleges that Defendants inadequately responded to various medical needs.  (*See id.* at pp. 19-20 of 26).  Mr. Rivera alleges violation of his Eighth Amendment rights based on Dr. Krebs' refusal to approve surgery for Mr. Rivera's right wrist.  (*See* SAC at pp. 19-20 of 26).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.   "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension."  *Self*, 439 F.3d at 1230

16

(internal quotation marks and citation omitted).  *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment violation recognized only if medical needs are "serious").  "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106.  To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"  *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847).

Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).  An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."  *Berry*, 900 F.2d at 1496.  The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  The level required to make out a claim for deliberate indifference is "more blameworthy than negligence," requiring "more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer*, 511 U.S. at 835.   *See also Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited . . . .").  For a prison official to be found liable of deliberate indifference under the Eighth Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.'"  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).  Where a plaintiff alleges refusal to render proper medical treatment, as Mr. Rivera asserts here, he must establish the defendant "deliberate[ly] refus[ed] to provide medical attention, as opposed to a particular course of treatment."  *Fleming v. Uphoff*, 210 F.3d 389 at * 2 (10th Cir. 2000).[4]

The court recognizes Mr. Rivera's medical problems as serious for purposes of the objective component of an Eighth Amendment claim.  *See, e.g., Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (citing cases holding that broken bones are sufficiently serious for purpose of Eighth Amendment).  *But see, e.g., Roberts v. Peters*, 129 F.3d 119 (7th Cir. 1997) ("Whether a skin rash such as [plaintiff's] is the type of serious medical condition necessary to support an Eighth Amendment violation is debatable") (unpublished decision).  The court next examines whether Mr. Rivera has adequately pled that Defendants acted with deliberate indifference.

First, Mr. Rivera's allegations that the Defendants' conduct violated § 1983 prior to January 20, 2007 are properly dismissed as barred by the statute of limitations.  (*See, e.g.*, SAC at pp. 10, 14-15, 18 of 26).

Second, Mr. Rivera's allegations amount to merely his disagreement with the

---

[4]   Copies of unpublished decisions cited are attached to this Recommendation.

medical care provided by the Defendants.  Mr. Rivera's own allegations indicate that he was evaluated and treated with great frequency.  Mr. Rivera simply claims that he needed more and different treatment than he received.  He challenges the effectiveness and competence of the treatment given.  Mr. Rivera asserts that he was provided the wrong ointments for his skin and that he should have been sent "to see a dermatologist specialist. . . and also for a biopsy to be taken from my red bumps," rather than the treatment that Defendants provided.  (*See* SAC at pp. 16, 17, 18 of 26).  Mr. Rivera presents conclusory allegations that amount to no more than his disagreement with the treatment provided.  Mr. Rivera's disagreement with the medical treatment he received does not rise to the level of a constitutional violation.   Whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation).  *See also Perkins*, 165 F.3d at 811 (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs");  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment");  *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (the Constitution does not guarantee a prisoner the treatment of his choice) (citations omitted);  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to treatment of prisoner did not establish constitutional violation);  *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation);  *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) ("The prisoner's right is to medical care -- not to the type or scope of medical care which he personally desires.") (internal quotation marks and citation omitted). Even if Mr. Rivera had alleged that another physician would have recommended different treatment, this would not serve to state an Eighth Amendment claim, as it would raise only

a question of medical judgment and not deliberate indifference.  Mr. Rivera's disagreement with his medical treatment cannot form the basis for relief pursuant to § 1983.

Third, Mr. Rivera alleges no more than negligence by the Defendants.  To the extent that Mr. Rivera alleges that the treatment he received was ineffective or improper, such allegation does not rise beyond mere negligence.  (*See, e.g.*, SAC at p. 19 of 26 ("orders for CT scan ignored and surgery cancelled due to Dr. Fortuna[t]o misdiagnosis.").  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) (internal quotation marks and citation omitted).  *See also Self*, 439 F.3d at 1234 ("a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient . . . to satisfy the subjective component of a deliberate indifference claim.").  Mr. Rivera's allegations of medical negligence do not support a claim for relief pursuant to § 1983.

Further, Mr. Rivera's allegations are too vague and conclusory to state a claim upon which relief can be granted.  For example, Mr. Rivera's allegations that Defendant Rittenhouse "had to call the hospital for the results . . . ," "told me to slowly start removing the splint and try to move it," and "sending me for more exrays [sic]" are not sufficient to state a claim that she was deliberately indifferent to his medical treatment.  (*See* SAC at p. 12 of 26).  Mr. Rivera alleges that Defendant Stock "is rogue, comb[ative], and evil." (*See* SAC at p. 18 of 26).  Other than general conclusory allegations, Mr. Rivera has not sufficiently alleged specific dates for the Defendants' conduct.  Mr. Rivera alleges conduct by individuals, such as P.A. Webster, Dr. Goldsmith, and Dr. Fenton, who are not named as Defendants in the case.  In sum, Mr. Rivera's allegations are not adequate to state any Eighth Amendment violation by Defendants Fortunato, Rittenhouse, Stock, or Krebs.

To the extent that Mr. Rivera is alleging a state law malpractice claim separate from his § 1983 claims (*see* Claim Four), Defendant Krebs argues that such claim must be

dismissed for failure to provide a certificate of review.  Colorado law specifically requires a certificate of review for "every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional." Colo. Rev. Stat. § 13-20-602(1)(a).

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a).   "The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, . . ." Colo. Rev. Stat. § 13-20-602(4).  More than 60 days has passed since this action was commenced on or about December 8, 2008 (*see* doc. # 1), and Mr. Rivera has neither filed a certificate of review nor sought an extension of time within which to file such a certificate.  To the extent Mr. Rivera has alleged a malpractice claim, such claim is properly dismissed for failure to file a certificate of review.  *See State v. Nieto*, 993 P.2d 493, 496 (Colo. 2000) (holding that a certificate of review was a prerequisite to a malpractice claim brought by a prison inmate against a prison nurse and a failure to submit the required certificate of review warranted dismissal of the plaintiff's malpractice claim).[5]

F.    Additional Claims

To the extent that Mr. Rivera mentions violation of "the First, Fourth, Fifth and Fourteenth Amendments," that Defendants "have intentional[l]y inflicted me with emotional distr[e]ss," the "UN Convention Against Torture," 42 U.S.C. §§ "1985(2)(3), 1986 and 1988," and "Title VI" (*See* SAC at pp. 21-22 of 26), he has not set forth any allegations to

---

[5]    As the court recommends dismissal of Mr. Rivera's federal claims, the court may decline to exercise supplemental jurisdiction over a state law claim.  *See* 28 U.S.C. § 1367(c)(3) (district court may refuse supplemental jurisdiction over state-law claims if federal claims are dismissed).

support such claims.  Mere recitation of numerous Amendments, statutes, and common law torts is insufficient to state a claim for relief.

Mr. Rivera further alleges in Claim Five that Defendant Mishiara, as the housing captain at SCF, has failed to provide accommodations pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131 *et seq.,* and knew of incidents in which correctional officers have closed the electric sliding doors on inmates.  (See SAC at pp. 20-21 of 26).  Mr. Rivera alleges that there are not enough ADA jobs, the medication line is not wheelchair accessible, there are not enough tables in the chow hall for inmates with wheelchairs, and the shower in Unit 1B does not have handicap railings.  (*See id.*).  Mr. Rivera alleges that Defendant Wingert responded inappropriately to his complaints about ADA compliance and that Defendant Holst has taken the role of ADA Coordinator without any proper training and has made a mockery of the ADA laws.  (See SAC at pp. 22-23 of 26).

To the extent that Mr. Rivera alleges violation of the ADA, the court notes that the ADA does not create liability against individuals who do not otherwise qualify as employers under the statutory definition.  *See Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 744 (10th Cir. 1999) (noting reasons for precluding individual liability under Title VII apply equally to ADA);  *U.S. E.E.O.C. v. AIC Security Investigations, Inc.*, 55 F.3d 1276, 1282 (7th Cir. 1995) ("We hold that individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA.").  The SAC fails to state a claim for relief against Defendant Mishiara or any of the individual Defendants based on the ADA.

The ADA contains three titles which address discrimination against persons with disabilities in three contexts.  To the extent that Mr. Rivera sues Defendants in their official capacities, "[t]he ADA's Title II, prohibiting discrimination in the distribution of public services, is the only title" that plaintiff's allegations arguably implicate.  *White v. State of Colo.*, 82 F.3d 364, 367 n. 5 (10th Cir. 1996).  *See also Pennsylvania Department of*

*Corrections v. Yeskey*, 524 U.S. 206 (1998) (Title II of the ADA applies to state prisons and prison services).

Title II provides in pertinent part:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A " 'qualified individual with a disability' " is defined as:

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

While Mr. Rivera alleges that he uses a wheelchair due to the red bumps on his legs, he has failed to sufficiently allege that he is disabled under the ADA.  To be "disabled" under ADA, a plaintiff must show he has a physical or mental impairment that substantially limits one or more major life activities.  *Holt v. Grand Lake*, 443 F.3d 762, 765 (10th Cir. 2006).  The ADA extends only to "a physical or mental impairment that substantially limits one or more of the major life activities of such individual. . . ." 42 U.S.C. § 12102(2).  Merely having an impairment does not make one disabled for purposes of the ADA.  *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir. 2001) ("the ADA demands that we examine exactly how [plaintiff's] major life activities are limited by his impairment."). "Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).

Mr. Rivera has not alleged that he is substantially limited any major life activity. Therefore, Rivera has failed to sufficiently allege a "disability."  A determination of disability "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Homeyer v. Stanley*

*Tulchin Associates, Inc.*, 91 F.3d 959, 962 (7th Cir. 1996).  "Some impairments may be disabling for particular individuals but not for others, depending upon the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors."  *Id.  But see Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading.").  Nor has Mr. Rivera alleged any facts, which if proven would show that he has been excluded from, or denied the benefits of, any CDOC program, service, or activity and that such denial such exclusion, denial, or discrimination was by reason of any disability.

Further, Mr. Rivera does not specifically seek any relief pursuant to the ADA.  (*See* SAC at p. 26 of 26).  The injunctive relief Mr. Rivera seeks does not relate to his ADA allegations.  His release from custody in September 2009 also moots his request for injunctive relief.  *See Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief).  Punitive damages may not be awarded in a private cause of action brought under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  The compensatory damages Mr. Rivera seeks relate to his medical treatment.  (*See, e.g.*, SAC at p. 26 of 26 ("Plaintiff respectfully prays this court grants Plaintiff's rights to proper medical care/treatment and civil and constitutional rights," seeking "[a]n order from the court to have CDOC clinical services give him proper medical and humane medical treatment," seeking a "final and formal investigation and audit of CDOC Clinical Services")).  The ADA does not provide an additional federal cause of action to challenge medical treatment provided to a prisoner.  *See Moore v. Prison Health Services, Inc.*, 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998) ("Plaintiff's claim under the ADA is no more than a challenge to his medical care and therefore fails to state a claim for relief.").  In sum, the court concludes that Mr. Rivera has

failed to adequately state a plausible claim for relief under the ADA.[6]

In his Response, Mr. Rivera raises for the first time a breach of contract claim against Defendant Krebs, alleging that he is a third-party beneficiary of a contract between PHP and the CDOC to provide proper medical care to the inmates at SCF. (*See* doc. # 38 at p. 7 of 11). First, Mr. Rivera does not properly state a claim by inserting an argument into his Response. A third-party beneficiary contract claim is entirely distinct from Mr. Rivera's claims pursuant to § 1983 or for malpractice. Second, Mr. Rivera has not alleged the elements of a breach of contract claim based on a third party beneficiary theory in any of his pleadings. (*See* Mr. Rivera's original Complaint (doc. # 5), Amended Complaint (doc. # 11), and SAC (doc. # 17)). Mr. Rivera has not alleged any facts or cited any basis in law to support his claim for breach of contract based on a third party beneficiary theory. Third, to the extent Mr. Rivera had any third party beneficiary interest at stake, he must rely on a contract rather than the Constitution or any federal law, and therefore no federal question is presented under 28 U.S.C. § 1331. As the court recommends dismissal of Mr. Rivera's federal claims, the court may decline to exercise supplemental jurisdiction over a state law claim. *See* 28 U.S.C. § 1367(c)(3) (district court may refuse supplemental jurisdiction over state-law claims if federal claims are dismissed).

G.    Qualified Immunity

To the extent that Mr. Rivera is suing Defendants in their individual capacities under § 1983, Defendants raise the defense of qualified immunity. Whether Defendants are

_____

[6]    While the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Roberts*, 484 F.3d at 1240 (internal quotation marks and citations omitted), the court also notes that, other than checking "yes" on his form complaint (*see* SAC at p. 25 of 26), Mr. Rivera has not set forth in his pleadings that he fully exhausted administrative remedies on his ADA claim. While Mr. Rivera attached to his Amended Complaint documents reflecting the administrative exhaustion process as to his claims regarding his cataract, skin condition, and wrist, he has attached nothing regarding an ADA claim.

entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* Having concluded above that Mr. Rivera has failed to state a claim that Defendants' conduct violated any constitutional right, Defendants are entitled to qualified immunity on Mr. Rivera's § 1983 claims.

H.     John and Jane Doe Defendants

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). To the contrary, the Federal Rules provide:

> "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint, the title of the action shall include the names of all the parties . . . ."

Fed. R. Civ. P. 10(a). Because anonymous parties are not permitted by the Federal Rules and Mr. Rivera has not identified the anonymous Defendants, the John and Jane Doe Defendants are properly dismissed from this civil action.

Accordingly, IT IS RECOMMENDED that:

1.    Defendant Krebs' Motion to Dismiss (filed June 22, 2009) (doc. # 31) be GRANTED and Defendant Krebs be dismissed from this civil action.

2.    Defendants' Motion to Dismiss (filed June 22, 2009) (doc. # 34) be GRANTED and Defendants Dowis, Milyard, Zavaras, Stock, Rittenhouse, Fortunato, Frantz, Mishiara, Wingert, Holst, and John and Jane Does be dismissed from this civil action.

3.    No claims remaining against any Defendants, this civil action be dismissed in its entirety.[7]

**Advisement to the Parties**

Within ***fourteen days*** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

---

[7]    In his Response, Mr. Rivera includes a request for appointed counsel.  (*See* Response (doc. # 38) at pp. 9, 10 of 11).  As the court recommends dismissal of this civil action, Mr. Rivera's request for appointed counsel is properly declined at this time.

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 29th day of January, 2010.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge